# UNITED STATES OF AMERICA
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

**CRIMINAL ACTION NO.: 1:09CR-50-M**

**UNITED STATES OF AMERICA**                                                  **PLAINTIFF**

v.

**RICKY JONES AND BRYAN POPPLEWELL**                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendant, Ricky Jones, to suppress [DN 26]. The Court held an evidentiary hearing for this matter on March 11, 2010 and the parties have submitted supplemental briefs. Jones's motion is now ripe for decision. For the following reasons, that motion is **DENIED**.

## I. BACKGROUND

Special Agent Greg Bunch of the London, Kentucky office of the Drug Enforcement Agency was the only witness that testified at the evidentiary hearing. Bunch testified that on April 16, 2009, he and Joe Michael Irvin, Chief of the Russell Springs Police Department, obtained information from a confidential informant that Jones traveled regularly to Louisville, Kentucky to obtain Oxycontin from co-defendant, Bryan Popplewell. He also told Irvin that Jones transported the pills in a plastic bag that he hid in his buttocks. (Hr'g Tr. 4:20-5:14; 31:22-32:3.) While investigating this tip, Bunch and Irvin spotted Jones engaging in what they believed to be a drug transaction with the driver of another vehicle, though they never saw money or drugs exchanged. (Id. 7:21-8:24.) In a later interview with Jeffrey Bryan, the driver

of the other vehicle, Bryan stated that he had just purchased one Oxycontin 80 milligram tablet from Jones.[1] (Id. 8:25-9:8.)

Later that same day, Bunch and Irvin were again contacted by the same confidential informant who told them that Jones was then on his way back to Russell Springs from Louisville. (Id. 9:16-22.) They positioned their vehicle north of Columbia, Kentucky along Highway 55–the road they believed was the most likely path Jones would travel on his way back from Louisville. (Id. 11:11-17.) They spotted Jones driving along the road at approximately 11:35 p.m. (Id. 11:3-8.) As Jones continued to drive along the highway into the Columbia city limits, Bunch and Irvin began following him. (Id. 13:3-5.) They followed him through the city of Columbia, and as they exited the city limits and passed over the Cumberland Parkway, Highway 55 turned into a dark, two-lane, rural road. (Id. 12:19-13:2.) According to Bunch, he and Irvin were unable to keep upon with Jones even traveling 85 to 90 miles per hour, and that Jones on multiple occasions swerved into the oncoming lane of traffic. (Id. 13:8-16.) Irvin called a Russell Springs patrol officer, Nathan Bradshaw, and asked him to conduct a traffic stop on Jones's vehicle. (Id. 13:7-23.)

According to a report filed by Bradshaw, he observed Jones's vehicle traveling along Highway 55 at a high rate of speed and in a manner that forced Bradshaw onto the right

---

[1] Jones points out that a receipt found in his vehicle showed that a purchase was made at a Liquor Barn in Louisville 2 hours and 5 minutes after this drug transaction allegedly took place. Assuming that the alcohol was purchased by Jones, he argues that it would be "physically impossible" to make the 117 mile drive from the site of the drug transaction to the Liquor Barn in that amount of time. But the MapQuest driving directions submitted by Jones showing a typical driving time of 2 hours and 17 minutes simply does not establish that driving such a route in a shorter amount of time is "physically impossible."

shoulder of the highway. (Def.'s Hr'g Ex. 4 at 6.) His radar indicated that Jones was traveling 67 miles per hour in a 55 mile per hour speed zone. (Id.) Bradshaw then attempted to conduct a traffic stop on the vehicle. (Id.) Before stopping, Jones made two turns; a left onto Highway 379 and then a right onto Highway 619. (Id.) According to Bradshaw's report, Jones failed to use his turn signal when turning onto Highway 619. (Id.) Upon stopping, Bradshaw placed Jones under arrest for reckless driving. (Id.)

Bunch and Irvin arrived at the scene shortly after the stop. (Hr'g Tr. 16:25-17:3.) While Bradshaw was performing a pat-down search of Jones, Irvin was talking to the passenger of the vehicle. (Id. 18:1-6.) The passenger initially told Irvin that he and Jones were in Campbellsville playing cards, but later admitted that they were on their way back from Louisville, but refused to "tell on anybody." (Id. 18:7-10.) Meanwhile, during the pat-down search, Bradshaw discovered a pill cutter containing a white residue on Jones's person and discovered a list of various names and phone numbers of known drug users and sellers in Jones's wallet. (Def.'s Hr'g Ex. 4 at 6.) Jones was then placed into Bradshaw's vehicle while Bunch and Irvin conducted a search of the truck. (Hr'g Tr. 23:7-15.) That night, Bunch and Irvin found a receipt from the Liquor Barn in Louisville time-stamped earlier that evening, a 9 millimeter rifle, a list of transactions involving "beans," which according to Bunch, "pretty obviously" referred to Oxycontin pills, and a little Louisville Slugger bat. (Id. 21:12-24:14.) They did not, however, find any Oxycontin pills.

Jones was then booked for reckless driving, carrying a concealed deadly weapon, and possession of drug paraphernalia, and his car was towed to Hudson's Towing. (Id. 26:20-23.)

3

The next day, Bunch and Irvin obtained a search warrant from a state court judge permitting the further search of Jones's vehicle. With the assistance of a drug canine, Bunch and Irvin discovered 78 Oxycontin tablets in the headliner of the vehicle. (Id. 27:3-28:4)

## II. DISCUSSION

Jones has moved to suppress from evidence the Oxycontin tablets along with all other evidence discovered as a result of the roadside search conducted in the early morning hours of April 17, 2009, and as a result of a search warrant executed later that day as fruits of the prior unlawful search. He argues that the initial search was unlawful because it was an invalid search incident to arrest pursuant to Arizona v. Gant, 556 U.S. ----, 129 S. Ct. 1710 (2009). And he argues that the subsequent search was also invalid because the affidavit identified evidence obtained as a result of the unlawful roadside search to establish probable cause.

A law enforcement officer may perform a traffic stop "[i]f there is probable cause to believe a traffic violation had occurred[.]" United States v. Perez, 440 F.3d 363, 370 (6th Cir. 2006); United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993). And although generally speaking, a search is only reasonable if it is "conducted pursuant to a warrant issued by an independent judicial officer," California v. Carney, 471 U.S. 386, 390 (1985), there are certain well-defined exceptions to this warrant requirement, see, e.g., Carroll v. United States, 267 U.S. 132 (1925) (automobile exception); Chimel v. California, 395 U.S. 752 (1969) (search incident to arrest exception). Because the Court concludes (1) that Officer Bradshaw had probable cause to stop Jones's vehicle for speeding and reckless driving and (2) Irvin and Bunch had probable cause to believe that Jones's vehicle contained illegal contraband, the roadside search was

4

lawful under the Fourth Amendment. It follows, then, that the subsequent search was also lawful.

### A. PROBABLE CAUSE TO STOP VEHICLE AND ARREST JONES

Jones first argues that Officer Bradshaw did not have probable cause to perform a traffic stop on his vehicle because Bradshaw was acting outside the jurisdictional limits of the City of Russell Springs. But as a police officer for a fifth class city, see KRS 81.010(5) (classifying Russell Springs as a fifth class city), Officer Bradshaw had arrest powers not only within the City of Russell Springs, but throughout Russell County as well, KRS 95.019 ("The chief of police and all members of the police force in cities of the first through fifth classes . . . may exercise those powers, including the power of arrest for offenses against the state, anywhere in the county in which the city is located . . . ."). See also Commonwealth v. Bishop, 245 S.W.3d 733, 734 (Ky. 2008) (KRS 95.019 "gives city police county-wide arrest powers . . . ."). According to Jones, he was stopped and arrested in Olga, Kentucky, a municipality within Russell County. Therefore, contrary to Jones's argument, Bradshaw had the power to arrest Jones there. Id.

Jones also argues that the stop was unlawful because Officer Bradshaw did not have probable cause to believe that a traffic violation had been committed. The Court disagrees. Special Agent Bunch testified that he and Irvin, who were traveling at 85 to 90 miles per hour, were unable to keep up with Jones in a location where the speed limit was 55 mile per hour. (Hr'g Tr. 14:13-16.) He also testified that he observed Jones swerve into the oncoming lane of traffic on several occasions. (Id. 13:8-16.) Jones insists that Bunch's testimony is not credible

5

because it defies the laws of physics. Noting that it is approximately 15.02 miles between Columbia, Kentucky and Olga, Kentucky and that Jones was stopped approximately 16 minutes after he was first spotted by Irvin and Bunch, Jones's average speed would have been 56 miles per hour, well below the speed reported by Bunch. But Bunch's testimony is not contradicted by Jones's arithmetic, which merely calculates an *average* speed. A 56 mile per hour average speed over 15 miles is not inconsistent with one traveling a high rate of speed, such as 90 miles per hour, for part of that distance, and a lower rate of speed, such as through the Columbia city limits, for the sum of that distance. Jones also argues that the Court should not believe Agent Bunch's testimony because he did not explain why Jones may have been driving recklessly, such as being under the influence of drugs or alcohol. But Bunch did provide an explanation: Jones was driving recklessly because he was driving so fast that he could not keep the car in his own lane of traffic while maneuvering curves. (Id. 13:8-16.) And Bunch's testimony that Jones was speeding and driving recklessly is further bolstered by Officer Bradshaw's report wherein Bradshaw indicated that his radar clocked Jones traveling 67 miles per hour in a 55 mile per hour speed zone and that Jones pushed Bradshaw's vehicle onto the shoulder of the road. (Id. 46:10-12.)

      The Court credits the testimony of Agent Bunch. He testified that he personally observed Jones exceeding the speed limit and driving in a reckless manner. He and Irvin reported this information to Officer Bradshaw, who also observed Jones speeding and driving recklessly. Therefore, there was probable cause to perform a traffic stop on Jones and to arrest him for reckless driving. See, e.g., United States v. Lopez, 567 F.3d 755, 757 (6th Cir. 2009)

(under Kentucky law, police may arrest a driver for violating KRS 189.290, more commonly referred to as "reckless driving.") (citing Hutchinson v. Commonwealth, No. 2002-CA-002569-MR, 2003 WL 22220333, at *1 (Ky. Ct. App. 2003)).

## B. VALIDITY OF PAT-DOWN SEARCH AND SEARCH OF WALLET

Upon arresting Jones for reckless driving and conducting a search of his person, Officer Bradshaw discovered a pill cutter in Jones's pocket and, in his wallet, discovered a list of names known to Chief Irvin to be drug users and dealers in the community. Jones insists that the discovery of this evidence was also unlawful. Aside from Jones's argument that the stop of his vehicle and his subsequent arrest were unconstitutional–an argument the Court has already rejected–Jones maintains that the search of his pocket and wallet were also unconstitutional because Bunch, Irvin, and Bradshaw did not have probable cause to believe that evidence of a crime or weapons would be found in those areas, especially in light of the tip from the confidential informant that Jones only carried the narcotics in his buttocks. At the very least, Jones insists that the search should have ended after the Officer Bradshaw found only a pill cutter in Jones's pocket, as such a device is not illegal.

The Court rejects Jones's arguments. Upon lawfully arresting Jones for reckless driving, Officer Bradshaw had "the unqualified authority . . . to search the person of the arrestee." United States v. Robinson, 414 U.S. 218, 225 (1973) (citing Carroll v United States, 267 U.S. 132 (1925)). "'[I]t is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.

In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.'" Id. at 226 (quoting Chimel, 395 U.S. at 762-63); see also Maldonado v. Pierri, No. 08 C 1954, 2010 WL 431478, at *7 (N.D. Ill. Feb. 1, 2010) ("[Defendant] was arrested pursuant to probable cause, and therefore the search of his person was incident to a lawful arrest and not subject to the restrictions of a protective pat-down.").

Jones would have the Court litigate in this case "the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." Id. at 235. But such a case-by-case adjudication is not required:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

Id. Therefore, in Robinson, the Supreme Court upheld a search of a crumpled package of cigarettes where the driver of a vehicle was arrested only for driving on a revoked license, even where the arresting officer "did not indicate any subjective fear of the [arrestee] or that he did not himself suspect that [arrestee] was armed." See id. at 236. "Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and

when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct." Id. (quoting Harris v. United States, 331 U.S. 145, 154-55 (1947)). Similarly, Officer Bradshaw, having discovered a wallet during his search of Jones's person, was entitled to inspect it and seize the list of known drug dealers and purchasers along with the pill cutter also found during the search as "fruits, instrumentalities, or contraband probative of criminal conduct." See id.

### C. PROBABLE CAUSE TO SEARCH VEHICLE

The search of Jones's vehicle was also lawful as it was supported by probable cause.[2] Under the so-called automobile exception to the warrant requirement, the police may conduct "a warrantless search of an automobile, based upon probable cause to believe that the vehicle contain[s] evidence of crime . . . ." California v. Acevedo, 500 U.S. 565, 569 (1991) (citing Carroll, 267 U.S. at 158-59). There is "no requirement of exigent circumstances to justify such a warrantless search[,]" United States v. Johns, 469 U.S. 478, 484 (1985), nor is there a requirement that the police search the vehicle immediately, Acevedo, 500 U.S. at 570 ("if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle."). And "'[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every

---

[2] Jones argues that the search of Jones's vehicle was prohibited by Gant as Jones was not in reaching distance of the vehicle at the time of the search, and the officers could not reasonably expect to find evidence related to the crime of arrest–reckless driving. See, e.g., Lopez, 567 F.3d at 757-58 (under Gant, "[t]here was no reason to think that the vehicle contained evidence of the offense of arrest, since that offense was reckless driving."). Nevertheless, the search did not violate Jones's rights if there was another valid justification for the warrantless search, such as the automobile exception. See United States v. Grooms, --- F.3d ----, 2010 WL 1687777, at *3 (8th Cir. 2010).

part of the vehicle and its contents that may conceal the object of the search.'" Johns, 469 U.S. at 484 (quoting United States v. Ross, 456 U.S. 798, 825 (1982)). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted).

Here, a tip from a confidential informant directed Irvin and Bunch's investigation toward Jones. The confidential informant told Irvin that Jones travels regularly to Louisville to obtain Oxycontin from Popplewell. On April 16, 2009, Irvin and Bunch observed Jones engaging in what appeared to be a drug transaction, and was later confirmed by the purchaser to be a sale of Oxycontin. The confidential informant notified Irvin that same day that Jones was on his way back from Louisville after purchasing more Oxycontin pills. Irvin and Bunch observed Jones traveling on a route typically traveled by one heading towards Russell Springs from Louisville. Upon following Jones, they observed him speeding and driving in a reckless manner. After stopping Jones, his passenger initially told officers that he and Jones had been in Campbellsville, but later changed his story and admitted to being in Louisville. And upon placing Jones under arrest for reckless driving, the officers discovered a pill cutter containing a white residue and a list of known drug dealers and users in his wallet.

The Court finds that this evidence was sufficient to justify Bunch, Irvin, and Bradshaw's warrantless search of Jones's vehicle as the search was supported by probable cause–the facts and circumstances known to these officers were sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime would be found in the automobile.

Jones argues that based upon the confidential informant's tip, the officers has probable cause to search, at most, Jones's buttocks, and failed to do so. But even if the officers had the authority to perform an invasive search upon Jones's body, it does not follow that they did not have the authority to perform a less invasive search of his automobile if they had probable cause to do believe the contraband would be found there. Probable cause is a "flexible, common-sense standard." <u>Texas v. Brown</u>, 460 U.S. 730, 742 (1983). Here, the officers had probable cause to believe that Jones was transporting a controlled substance from Louisville to Russell Springs in the vehicle he was driving. And based upon their investigation from earlier that day, they obtained evidence that Jones was actually dealing drugs out of that vehicle. It was more than reasonable, based upon the totality of circumstances, for the officers to believe that the controlled substance would be found, not only upon Jones's person, but also in the vehicle he was using to transport the narcotics to Russell Springs. Therefore, the search of Jones's automobile and the evidence seized during the course of that search was constitutional and it was not improper for Chief Irvin to identify in his affidavit in support of the search warrant the evidence discovered as a result of the roadside search. Accordingly, the motion by the defendant, Ricky Jones, to suppress [DN 26] is **DENIED**.


cc: Counsel of Record